UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JASMAINE M. LINTON,

Petitioner,

v.

Case No. 26-cv-360-pp

UNITED STATES OF AMERICA,

Respondent.

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 23-cr-21-pp

JASMAINE M. LINTON,

Defendant.

---

**ORDER SCREENING PETITION, DENYING AS MOOT MOTIONS TO APPOINT COUNSEL (DKT. NO. 2) AND FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3) AND DISMISSING CASE**

---

Nearly eight months ago, on March 5, 2026, the court received a document from the defendant in criminal case 23-cr-21, United States of America v. Jasmaine M. Linton (E.D. Wis.), titled "Motion to Vacate, Set Aside, Or Correct Sentence By a Person in Federal Custody." Case No. 23-cr-21 at Dkt. No. 63. The clerk's office opened the motion as a new motion to vacate, set aside or correct sentence under 28 U.S.C. §2255 (also known as a "§2255 petition"). See Case No. 26-cv-360, Linton v. United States. In the new case, the defendant/petitioner filed a motion to appoint counsel, Case No. 26-cv-360 at Dkt. No. 2, and a motion for leave to proceed without prepaying the filing fee, id. at Dkt. No. 3.

The petition asks the court to revise the petitioner's thirty-month, consecutive sentence and order that it run concurrently with the sentence he received in Sheboygan County Circuit Court Case No. 22CF000589. He also asks the court to credit the time he spent in state custody on the Sheboygan County state case against his federal sentence. Because neither of these requests are cognizable under 28 U.S.C. §2255, because the defendant/petitioner does not identify any bases for the court to revisit its sentence and because the petition motion was not timely filed as required by 28 U.S.C. §2255(f), the court will dismiss the petition with prejudice and deny the pending motions as moot.

# I. BACKGROUND

## A. Case No. 23-cr-21: Procedural History

On February 7, 2023, a grand jury sitting in the Eastern District of Wisconsin returned a one-count indictment charging the defendant/petitioner with a single count of being a prohibited person in possession of a firearm. Case. No. 23-cr-21, Dkt. No. 1. On May 10, 2024, the parties filed an executed plea agreement. Id., Dkt. No. 41. The plea agreement stated that the defendant/petitioner would plead guilty to the indictment and that the government would recommend a sentence at the low end of the applicable sentencing guideline range. Id. After an extensive colloquy, the court accepted the defendant/petitioner's guilty plea on May 13, 2024. Id., Dkt. No. 45.

Two weeks before the sentencing hearing, the court received the defendant/petitioner's presentence investigation report ("PSR"). Id., Dkt. No. 52. The factual basis of the PSR explained that the conduct underlying this federal criminal case occurred on October 31, 2022, when Milwaukee police officers responded to a report of a man threatening individuals outside a bar on

Martin Luther King Jr. Drive in Milwaukee, Wisconsin. Id., Dkt. No. 52 at ¶9. Officers observed a man, later identified as the defendant/petitioner, running through a parking lot holding a black firearm in his hand. Id. The defendant/petitioner ran behind a car and threw the gun; offers recovered the gun and arrested him. Id. When arrested, the defendant/petitioner was wearing a bullet-proof vest and admitted to officers that he had been convicted of a felony. Id. Officers captured the arrest conduct on body camera footage. Id.

In the section describing the defendant/petitioner's criminal history, the PSR described a (more serious) incident that had occurred a week later. Id. at ¶41. At approximately 2:30 a.m. on November 6, 2022, City of Sheboygan police officers responded to report of a vehicle hitting a person. Id. After attending to a victim with a serious leg injury (and discussing the events with several other victims), officers obtained surveillance video from a bar and identified the defendant/petitioner as the driver of the vehicle. Id. One of the victims described the defendant/petitioner as demanding another drink at the bar and, after being told the bar was closing and being asked to leave, the defendant/petitioner told the victims that he was going to kill them. Id. Based on this conduct, the defendant/petitioner pled guilty in Sheboygan County Circuit Court to one count of first degree reckless injury and one count of first degree recklessly endangering safety. Id., Dkt. No. 52 at ¶41. On September 19, 2023 (almost a full year before the defendant/petitioner's federal sentencing hearing) the defendant/petitioner was sentenced to a total of ten years' imprisonment in Sheboygan County Case No. 22CF000589. Id. The federal PSR advised that the defendant/petitioner's projected release date to extended supervision was November 2032. Id.

For the conduct underlying the defendant/petitioner's federal criminal case, the PSR concluded that the base offense level under the Sentencing Guidelines—given the type of firearm possessed and the defendant/petitioner's prior criminal record—was 26. Id. at ¶15. After deducting 3 points for the defendant/petitioner's acceptance of responsibility, the report calculated that a total offense level of 23 in criminal history category V resulted in a guideline imprisonment range of 84 to 105 months. Id. at ¶104.

At the defendant/petitioner's August 8, 2024 sentencing hearing, the parties asked for the same sentence—eighty-four (84) months—but asked the court to impose that eighty-four months very differently. Both the government's sentencing memorandum and oral remarks asked the court to run the eighty-four-month sentence consecutive to (in addition to) the defendant/petitioner's ten-year Sheboygan County Circuit Court sentence. Id., Dkt. No. 54, Dkt. No. 56 at 00:09:45 (audio of sentencing hearing). In other words, the government argued for a sentence which would keep the defendant/petitioner in custody until approximately 2039.

Defense counsel asked for the eighty-four-month federal sentence to run concurrently with the defendant/petitioner's Sheboygan County sentence; if the court elected that option, the defendant/petitioner likely would have completed his term of federal custody while he was serving his state sentence and would be released around the November 2032 date described in the PSR. Id. at Dkt. No. 51.

The court chose a middle ground and imposed a term of thirty-months' imprisonment to run consecutively to the sentence imposed in the Sheboygan County Circuit Court Case—meaning that the defendant/petitioner likely

would complete the custodial part of his sentenced in about 2035. The defendant/petitioner did not appeal his federal sentence.

B. Case No. 26-cv-360: Defendant-Petitioner's Request for Relief

In his March 5, 2026 petition (filed eighteen months after the August 8, 2024 federal sentencing hearing), the defendant/petitioner asks the court to revisit its decision to impose the thirty-month sentence to run consecutively to the Sheboygan County sentence. Case No. 26-cv-360, at Dkt. No. 1. Specifically, he asks the court to "reconsider his sentence, and to impose a concurrent sentence to run concurrently to his state sentence. He also ask[s] that the court credit him for time already served while in federal detention." Id. at 9. The defendant/petitioner's letter asserts that the court should not consider his motion time-barred under 28 U.S.C. §2255(f), because "U.S.S.G. §5G1.3 became effective November 1, 2025 concerning consecutive sentences." Id. at 1.

The defendant/petitioner recounts that the court sentenced him to thirty months to run consecutively to any other sentence and did not credit the defendant/petitioner for any time spent in detention while awaiting his federal sentencing. Id. at 2. The defendant/petitioner argues that the United States Sentencing Guidelines ("U.S.S.G.") allowed the court to run his sentence concurrently under U.S.S.G. §5G1.3. Id. The defendant/petitioner observes that he was not serving any term of imprisonment when he committed the instant, federal offense; he argues that U.S.S.G. §5G1.3(a) (which advises federal courts to impose a consecutive sentence in such a scenario) would not apply to him. Id. The defendant/petitioner then recounts U.S.S.G. §5G1.3(b) and U.S.S.G. §1B1.3 ("Relevant Conduct") and argues that he does not fall under those subsections either:

> [defendant-petitioner] committed the instant offense on his own without any co-conspirators. No one was injured. This wasn't a re-occurring offense that Linton has committed previously and as the record shows, Linton was not in his right state of mind due to being totally inebriated at the time of the commencement of the offense. . . .

Id. at 4.

The defendant/petitioner then explains in some detail that he was so intoxicated during the commission of the federal offense of conviction that he was unable to form the necessary mental state to commit a crime. Id. at 5-6. But the defendant/petitioner "does not dispute that he is guilty of some degree of possessing a firearm," and does not request any relief related to this assertion about his intoxication. Id.

The only other relief the defendant/petitioner seeks is for the court to give him sentence credit. Id. at 6. The defendant/petitioner cites 18 U.S.C. §3585, "Calculation of a Term of Imprisonment," and argues that the court should have credited his term of incarceration in state custody prior to sentencing toward his total imprisonment term. Id. at 7. The defendant/petitioner's conclusion explains that he is asking the court to alter his federal sentence to a "concurrent" sentence so that he can be moved to a reduced custody level within the Wisconsin Department of Corrections. Id. at 8.

## II. ANALYSIS

When the court receives a §2255 petition, it must review, or "screen," the petition. At the screening stage, the court considers whether the defendant/petitioner has raised claims that can be adjudicated in a §2255 proceeding, whether the defendant/petitioner has exhausted his claims and whether he filed the motion within the limitation period.

The court does not need to proceed past the first step. The defendant/petitioner asks the court to change his sentence from one that runs consecutive to the Sheboygan County sentence to one that runs concurrently with that sentence. As best the court can tell, the defendant/petitioner's reliance on U.S.S.G. §5G1.3 and accompanying statements are an argument that nothing prevented the court from imposing a concurrent sentence; in other words that the federal court had the authority to, and could have if it had chosen to, impose a concurrent sentence. Id. The court agrees. It *could* have imposed the federal sentence to run concurrently; federal courts generally "have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings, including state proceedings." Setser v. United States, 566 U.S. 231, 236 (2012).

Because the court knew that it had the discretion to impose a concurrent sentence, it explicitly asked for the parties' arguments on a concurrent versus consecutive sentence at the outset of their remarks. Case No. 23-CR-21, Dkt. No. 56 at 00:09:20 (audio of sentencing). Neither the prosecutor nor defense counsel argued that the guidelines required[1] or otherwise recommended that the court impose the defendant/petitioner's sentence consecutively *or*

---

[1] The defendant-petitioner uses words like "must" when describing what U.S.S.G. §5G1.3(a) provides. See Case No. 26-cv-360 at Dkt. No. 1 at p. 2. Although U.S.S.G. §§5G1.3(a) and 5G1.3(b) use the language "shall be imposed[,]" the court has the authority to disagree with a recommendation under §5G1.3. See United States v. Moore, 784 F.3d 398, 404 (7th Cir. 2015) ("But courts are also free to disagree with a guidelines recommendation, as the court did here when it rejected concurrent sentences under section 5G1.3(b)."). As the court told the defendant at his change-of-plea hearing and again at sentencing, the Sentencing Guidelines are advisory and the court is not required to follow them.

concurrently. Although the parties' recommendations presented two very different proposals, they both acknowledged that the concurrent versus consecutive choice was one that the guidelines and the law advised was solely within the court's discretion to make.

The court ultimately devoted a significant portion of its sentencing remarks to this analysis. It concluded it could not in good conscience give the defendant/petitioner a concurrent sentence of eighty-four months because that would result in the defendant/petitioner effectively spending no time in federal custody for his federal offense conduct. Id. at 00:43:00. The court also stated that it did not believe it was fair to give the defendant/petitioner a consecutive sentence of eighty-four months because that would result in the defendant/petitioner spending a total of seventeen years in prison. Id. at 00:44:30. The court elected a middle ground—a sentence of thirty months (fifty-four months less than what the parties had recommended) to run consecutively to the defendant/petitioner's state court sentence; this imposed *some* time in federal custody for the defendant/petitioner's federal conduct, but not as much as the government proposed.

The court agrees with the defendant/petitioner that U.S.S.G. §5G1.3(a) and (b) did not apply to him. The court agrees with him (and agreed with him at the time of his sentencing) that the Guidelines did not advise the court to impose a consecutive sentence under U.S.S.G. §5G1.3(a). That section provides:

> If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

U.S.S.G. §5G1.3(a). As the defendant/petitioner observes, the conduct underlying his federal case occurred on October 31, 2022—a week *before* the conduct underlying his state case (November 6, 2022). Accordingly, the defendant/petitioner did not commit his federal crime while he was "serving a term of imprisonment" or "after sentencing for, but before commencing service of, such term of imprisonment."

Similarly U.S.S.G. §5G1.3(b) provides:

> If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:
>
> > **(1)** the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Federal Bureau of Prisons; and
> >
> > **(2)** the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

U.S.S.G. §5G1.3(b). But as the defendant/petitioner observes, his November 2022 conduct does not meet the definition for relevant conduct under U.S.S.G. §1B1.3. So §5G1.3(b) does not apply to the defendant/petitioner's case, meaning that the Guidelines did not advise a concurrent sentence either.[2]

But even though the court agrees with the defendant/petitioner about the Guidelines, his argument does not provide a basis for relief under 28

---

[2] As the government's sentencing memorandum pointed out, U.S.S.G. §5G1.3(d) applied to the defendant/petitioner. That "Policy Statement" states, "In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense."

U.S.C. §2255(f). Generally, even guideline *errors* (a misapplication or miscalculation) do not warrant §2255 relief: "[t]he Seventh Circuit long has held that guidelines errors are not the kinds of 'miscarriages of justice' that warrant §2255 relief if they do not result in illegal sentences—sentences that exceed the statutory maximum." Gomez v. United States, Case No. 23-CV-339-PP, 2024 WL 5238223, at *12 (E.D. Wis. Dec. 27, 2024) (citing Hawkins v. United States, 724 F.3d 915, 916-17 (7th Cir. 2013)). The statutory maximum for the crime to which the defendant/petitioner pled guilty—being a prohibited person in possession of a firearm under 18 U.S.C. §922(g)(1)—is fifteen years. 18 U.S.C. §924(a)(8). Whether the court chose to run its thirty-month sentence concurrently or consecutively, the sentence did not exceed the statutory maximum, so even if the court had somehow mis-applied §5G1.3, the defendant/petitioner would not be entitled to §2255 relief.

Nor does the defendant/petitioner's reliance on 18 U.S.C. §3585 provide a basis for relief. Subsection (b) of that statute says:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> **(1)** as a result of the offense for which the sentence was imposed; or
>
> **(2)** as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against any other sentence.

18 U.S.C. §3585(b). In other words, this statute prohibits the Bureau of Prisons from giving the defendant/petitioner credit for his pre-sentence detention if that time had been credited against another sentence. In the defendant/petitioner's case, his detention from November of 2022 until August

8, 2024 was credited against his ten-year state sentence; §3585(b)(2) prohibited the Bureau of Prisons from giving the defendant/petitioner "double" credit for this time. The court could not have given the defendant/petitioner credit for his time spent in detention prior to his federal sentencing.

Without any viable avenue for relief under §2255, the court must dismiss the petition. Nor can the court construe the petition as warranting relief under any other federal statute. 18 U.S.C. §3582(c) prohibits a court from modifying a term of imprisonment once it has been imposed except in situations involving compassionate release (illness, age, family circumstances), or where a defendant/petitioner provided substantial assistance to the government, or where the applicable guidelines have been amended downward in the defendant/petitioner's favor. None of those circumstances apply here.

Even if the defendant/petitioner had stated a cognizable §2255 claim, the court likely would have found the petition untimely filed. Generally, petitions under 28 U.S.C. §2255 must be filed within one year of the defendant/petitioner's judgment of conviction becoming final (28 U.S.C. §2255(f)(1)) or within one year of several other qualifying events, see 28 U.S.C. §2255(f)(2)-(4)). The defendant/petitioner says that "pursuant to section 2255(h)(2) (timeliness of motion) 28 U.S.C. 2255 does not bar [the defendant/petitioner] for timeliness of motion. U.S.S.C. §5G1.3 became effective November 1, 2025 concerning consecutive sentences." Case No. 26-cv-360, Dkt. No. 1 at 1.

The court sentenced the defendant/petitioner on August 8, 2024 and entered a judgment of conviction the next day—August 9, 2024. Case No. 23-CR-21, Dkt. Nos. 57 (sentencing minutes), 58 (judgment). The defendant/petitioner did not file a notice of appeal; in fact, in his plea

agreement he had waived his right to appeal his conviction or sentence. Id., Dkt. No. 41 at ¶30. Under §2255(f)(1), the defendant/petitioner's judgment of conviction became "final" for §2255 purposes when the time for appealing his sentence expired. See Clarke v. United States, 703 F.3d 1098, 1100 (7th Cir. 2013). The defendant/petitioner had fourteen days from his August 8, 2024 sentence to file a notice of appeal—in other words, he had to appeal by August 22, 2024. Fed. R. App. P. 4(b)(1)(A)(i). He did not do so, so the defendant/petitioner's period to file a §2255 petition under §2255(f)(1) expired one year later (on August 22, 2025). The defendant/petitioner filed his §2255 petition on March 2026—over six months past that deadline.

The defendant/petitioner cites §2255(h)(2) as the reason his petition would be timely. That section provides:

> (h) A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—
>
> . . .
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. §2255(h)(2). That provision does not apply to the defendant/petitioner. Section 2255(h)(2) governs a defendant/petitioner's *second or successive* motion. The court is unaware of any first (or previous) motion from the defendant/petitioner; an internal search of the court's docketing system does not reveal any other cases challenging his conviction in Case No. 23-cr-21.

But because the defendant/petitioner represents himself, the court must construe his motion liberally. Wyatt v. United States, 574 F.3d 455, 459 (7th Cir. 2009) ("pro se collateral review filing are construed liberally."). The

language of §2255(h)(2) roughly follows the language found in 28 U.S.C. §2255(f)(3), and §2255(f)(3) does not concern second or successive motions. 28 U.S.C. §2255(f)(3) provides that the one-year limitation period for filing a §2255 motion may begin on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Id.

But even construing the petition as invoking §2255(f)(3) does not render it timely filed. The petitioner is incorrect that §5G1.3 first become effective on November 1, 2025. Guideline §5G1.3 has existed—in some form—since 1987. A new *version* of Guideline §5G1.3 went into effect on November 1, 2025. But that new version did not change any language in the actual guideline from to the version of §5G1.3 that was effective when the court sentenced the defendant/petitioner in August of 2024. Compare U.S.S.G. §5G1.3 (eff. Nov. 1, 2025) with U.S.S.G. §5G1.3 (eff. Nov. 1, 2023-Nov. 1, 2025). The only changes that became effective in the November 1, 2025 version as compared to the previous version were changes to the "Commentary"/ "Application Notes" section which follows the guidelines. Id.

Even if language in the text of Guideline §5G1.3 *had* changed on November 1, 2025, new language in a sentencing guideline is not equivalent to "a right recognized by the Supreme Court made retroactively applicable to cases on collateral review." Since the United States Supreme Court decided United States v. Booker, 543 U.S. 220, 261-262 (2005), the guidelines have been *advisory*; they provide guidance to judges in their effort to determine an appropriate sentence. They do not bind a district court's sentencing determination and their revision does not excuse an otherwise untimely filing.

In short, because the court cannot identify any provision §2255(f) or other equitable doctrine that would excuse the petition's untimeliness, the court would have been required to dismiss his petition as untimely even if it had found one of his grounds for relief cognizable under §2255.

## III. Motion to Appoint Counsel (Dkt. No. 3) and Motion to Proceed Without Prepayment of Filing Fee (Dkt. No. 2)

Because the court has found that the defendant/petitioner has not presented any legal basis for relief under §2255 and that he likely filed his petition more than six months after the one-year limitation period expired, the court need not decide his motion to appoint a lawyer. And there is no filing fee required for filing a §2255 petition, so there is no need for the court to rule on the defendant/petitioner's motion for leave to proceed without prepaying the filing fee. The court will deny those motions as moot.

## IV. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A court may issue a certificate only if the applicant makes a substantial showing of the denial of a constitutional right." See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability because, on this record, reasonable jurists could not debate that the defendant/petitioner is not entitled to habeas relief under 28 U.S.C. §2255.

## V. Conclusion

The court **DENIES AS MOOT** the defendant/petitioner's motion to proceed without prepaying the filing fee. Case No. 26-cv-360, Dkt. No. 3.

The court **DENIES AS MOOT** the defendant/petitioner's motion to appoint counsel. Case No. 26-cv-360, Dkt. No. 2.

The court **DENIES** the defendant/petitioner's motion to vacate, set aside or correct sentence. Case No. 26-cv-360, Dkt. No. 1.

The court **DECLINES** to issue a certificate of appealability.

The court **ORDERS** that this case is dismissed.

Dated in Milwaukee, Wisconsin this 9th day of November, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**